UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | |
|---|---|
| GREGORY D. DOUGLAS, | ) |
| Plaintiff, | ) ) ) |
| v. | ) NO. 1:18-cv-0015 ) CHIEF JUDGE CRENSHAW |
| DAMON T. HININGER *et al.*, | ) ) |
| Defendants. | ) |

**MEMORANDUM OPINION**

Gregory D. Douglas is a state prisoner incarcerated at the West Tennessee State Penitentiary in Henning, Tennessee although the events about which he complains took place while he was housed at the South Central Correctional Facility ("SCCF") in Clifton, Tennessee. The Plaintiff proceeds *in forma pauperis*. (Doc. No. 4.) Plaintiff's complaint for civil rights violations under 42 U.S.C. § 1983 against Defendant Damon T. Hininger, Brandon E. Bowers, Joseph J. Froio and Coreen G. Trafton, and the supplement to the complaint filed on March 14, 2018 are before the Court for an initial review pursuant to the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. §§ 1915(e)(2) and 1915A, and 42 U.S.C. § 1997e.[1] (Doc. Nos. 1, 8.)

**I.     INITIAL REVIEW**

    **A.     Factual Allegations**

Plaintiff alleges that on October 2, 2016, while he was housed in the Skylab Unit at SCCF, Defendant Trafton came to his cell and told him to pack his belongings because he was being moved to another cell. (Doc. No. 1 at Page ID# 5; Doc. No. 8 at Page ID# 38.) When Plaintiff asked where he was being moved, Defendant Trafton told him it did not matter and he

---

[1] Plaintiff filed his complaint in the Western District on or about September 12, 2017. The case was transferred to this Court on February 9, 2018.

should just pack up.  (Id.)  About an hour later, Correctional Officers ("CO") Martinez and Defendant Froio arrived at Plaintiff's cell and told him to come with them.  (Id.)  At that time, Plaintiff believed he was being taken to another cell in the Skylab Unit as he had been housed in that unit for 6 months because there were "incompatibles on the compound."  (Id.)  As he was coming out of his cell, Plaintiff asked CO Martinez and Defendant Froio where they were taking him.  (Id.)  They told Plaintiff that he was moving to "Gemini A pod" on the compound.  (Id.)  Plaintiff told them he would not go to Gemini A pod and that they knew that Plaintiff had incompatibles on the compound.  (Id.)  Plaintiff heard CO Martinez and Defendant Froio say that Plaintiff had "been back here [for] months [and that] he [is going to] get his punk ass out of here" and they told him "now come on you['re] moving."  (Id.; Doc. No. 8 at Page ID# 39.)  Plaintiff got into a physical altercation with CO Martinez and Defendant Froio.  (Id.)  They sprayed Plaintiff with mace, at which time he laid down on the ground and let CO Martinez and Defendant Froio handcuff him behind his back.  (Id.)  As Plaintiff was lying on the ground handcuffed, CO Martinez was spraying him with mace "constantly while saying you black mother fucker."  (Id.)  Plaintiff alleges that he was in compliance and was not resisting.  (Id. at Page ID# 8; Id.)

     Lieutenant Ward and Defendant Trafton arrived.  (Id.)  Plaintiff alleges that he had been laying on the floor of Skylab C-pod in compliance for about 3 to 5 minutes, at which time "they get me up and walk me out [of] the pod," took Plaintiff to the "core area," "ran my face and head into the wall [and] then took me in[to] a small room in the Skylab core area."  (Id.)  Plaintiff was still in restraints with his hands handcuffed behind him.  (Id.)  Plaintiff heard someone say, "now [it's] his turn," at which point "they start repeatedly beating my face and head against the wall, pulling my hair, [and] bending my arms."  (Id.)  Plaintiff alleges that they are "throwing me from the floor to the ground, while kicking and punching me repeatedly."  (Id.)  Plaintiff alleges that

2

he was "a bloody mess by now."  (Id.)  Plaintiff heard the Nurse come in and say "get him to medical!"  (Id.)  Plaintiff opened his eyes so he could see who was in the room with him and he saw Lieutenant Ward, Captain Inman, and Defendants Trafton, Bowers and Froio.  (Id.)  Plaintiff went to the medical clinic and the Nurses said that his wounds were too severe for them to handle.  (Doc. No. 1 at Page ID# 8; Doc. No. 8 at Page ID# 39, 42.)  Plaintiff was "rushed" to the Wayne County Hospital where he was treated for a broken nose and had "both of my eyes glued back together."  (Id.; Doc No. 8 at Page ID# 42.)  Plaintiff was housed in the clinic for about 7 to 8 weeks as his injuries healed.  (Id.)

Plaintiff alleges that Defendants violated his Eighth Amendment right to be free from racial discrimination and excessive force.  As relief, he seeks monetary damages.

### B. Standard of Review

If an action is filed *in forma pauperis*, "the court shall dismiss the case at any time if the court determines that . . . the action . . . fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii). In assessing whether the complaint in this case states a claim on which relief may be granted, the court applies the standards under Rule 12(b)(6) of the Federal Rules of Civil Procedure, as construed by Ashcroft v. Iqbal, 556 U.S. 662, 678–79 (2009), and Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555–57 (2007).  See Hill v. Lappin, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that "the dismissal standard articulated in Iqbal and Twombly governs dismissals for failure to state a claim under [§ 1915(e)(2)(B)(ii)] because the relevant statutory language tracks the language in Rule 12(b)(6)"). "Accepting all well-pleaded allegations in the complaint as true, the Court 'consider[s] the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief.'" Williams v. Curtin, 631 F.3d 380, 383 (6th Cir. 2011) (quoting Iqbal, 556 U.S. at 681) (alteration in original). "[P]leadings that . . . are no more than conclusions[] are not entitled to the assumption of truth.

3

While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Iqbal, 556 U.S. at 679; see also Twombly, 550 U.S. at 555 n.3 ("Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.").

The court must construe a *pro se* plaintiff's complaint liberally, Boag v. McDaniel, 454 U.S. 364, 365 (1982), and accept the plaintiff's allegations as true unless they are clearly irrational or wholly incredible. Denton v. Hernandez, 504 U.S. 25, 33 (1992); see also Williams, 631 F.3d at, 383 (recognizing that "[p]ro se complaints are to be held to less stringent standards than formal pleadings drafted by lawyers, and should therefore be liberally construed." (internal quotation marks and citation omitted).) *Pro se* litigants, however, are not exempt from the requirements of the Federal Rules of Civil Procedure. Wells v. Brown, 891 F.2d 591, 594 (6th Cir. 1989). The court is not required to create a claim for the plaintiff. Clark v. Nat'l Travelers Life Ins. Co., 518 F.2d 1167, 1169 (6th Cir. 1975); see also Brown v. Matauszak, 415 F. App'x 608, 613 (6th Cir. 2011) ("[A] court cannot create a claim which [a plaintiff] has not spelled out in his pleading") (internal quotation marks and citation omitted); Payne v. Sec'y of Treas., 73 F. App'x 836, 837 (6th Cir. 2003) (affirming *sua sponte* dismissal of complaint pursuant to Fed. R. Civ. P. 8(a)(2) and stating, "[n]either this court nor the district court is required to create Payne's claim for her").

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988); Dominguez v. Corr. Med. Servs., 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for

4

vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. Albright v. Oliver, 510 U.S. 266, 271 (1994).

### C. Discussion

1. Damon Hininger

Although Plaintiff identifies Damon Hininger as a Defendant, he fails to allege that Defendant Hininger engaged in any conduct which resulted in a violation of his constitutional rights.[2]

It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. See Twombly, 550 U.S. at 544 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to pro se complaints. See Gilmore v. Corr. Corp. of Am., 92 F. App'x 188, 190 (6th Cir. 2004) (dismissing complaint where plaintiff failed to allege how any named defendant was involved in the violation of his rights); Frazier v. Michigan, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); Griffin v.

---

[2] To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988); Dominguez v. Corr. Med. Servs., 555 F.3d 543, 549 (6th Cir. 2009); Street v. Corr. Corp. of Am., 102 F.3d 810, 814 (6th Cir. 1996). In order for a private party's conduct to be under color of state law, it must be "fairly attributable to the State." Lugar v. Edmondson Oil Co., 457 U.S. 922, 937 (1982); Street, 102 F.3d at 814. There must be "a sufficiently close nexus between the State and the challenged action of [the defendant] so that the action of the latter may be fairly treated as that of the State itself." Skelton v. Pri-Cor, Inc., 963 F.2d 100, 102 (6th Cir. 1991) (citing Jackson v. Metro. Edison Co., 419 U.S. 345, 351 (1974)). For the sake of this initial review, the Court assumes, without deciding, that Defendant Hininger is a state actor.

5

Case 1:18-cv-00015 Document 9 Filed 04/04/18 Page 5 of 9 PageID #: 48

Montgomery, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant); Rodriguez v. Jabe, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries"). Because Plaintiff's claims fall far short of the minimal pleading standards under Fed. R. Civ. P. 8 (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief"), his complaint must be dismissed against Defendant Hininger.

To the extent that Plaintiff intends to suggest that Defendant Hininger is liable for the conduct of his subordinates, Plaintiff still fails to state a claim against Defendant Hininger. A claimed constitutional violation must be based upon active unconstitutional behavior. Grinter v. Knight, 532 F.3d 567, 575-76 (6th Cir. 2008); Greene v. Barber, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. Grinter, 532 F.3d at 576; Greene, 310 F.3d at 899; Summers v. Leis, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. See Shehee v. Luttrell, 199 F.3d 295, 300 (6th Cir. 1999). Because Plaintiff has failed to allege that Defendant Hininger engaged in any active unconstitutional behavior, he fails to state a claim against Defendant Hininger.

2. Eighth Amendment: Racial Discrimination

The only allegation in the complaint that suggests that Plaintiff was the victim of racial discrimination is the allegation that while spraying Plaintiff with mace, CO Martinez said "you black mother fucker." However, Plaintiff has not named CO Martinez as a defendant in this action. Nevertheless, even if CO Martinez were a defendant, Plaintiff could not state a claim

6

against him for racial discrimination.

The use of harassing or degrading language by a prison official, although unprofessional and deplorable, does not rise to constitutional dimensions. See Ivey v. Wilson, 832 F.2d 950, 954-55 (6th Cir. 1987); see also Johnson v. Dellatifa, 357 F.3d 539, 546 (6th Cir. 2004) (harassment and verbal abuse do not constitute the type of infliction of pain that the Eighth Amendment prohibits); Violett v. Reynolds, No. 02-6366, 2003 WL 22097827, at *3 (6th Cir. Sept. 5, 2003) (verbal abuse and harassment do not constitute punishment that would support an Eighth Amendment claim); Murray v. U.S. Bureau of Prisons, No. 95-5204, 1997 WL 34677, at *3 (6th Cir. Jan. 28, 1997) ("Although we do not condone the alleged statements, the Eighth Amendment does not afford us the power to correct every action, statement or attitude of a prison official with which we might disagree."); Brown v. Toombs, No. 92-1756, 1993 WL 11882 (6th Cir. Jan. 21, 1993) ("Brown's allegation that a corrections officer used derogatory language and insulting racial epithets is insufficient to support his claim under the Eighth Amendment."). Accordingly, even if CO Martinez were a defendant, Plaintiff has failed to state an Eighth Amendment claim against CO Martinez arising from his alleged verbal abuse.

       3. Eighth Amendment: Excessive Force

Plaintiff alleges that Defendants Bowers, Froio and Trafton viciously beat him while he was in restraints, after he had been sprayed with mace and was compliant. Additionally, Plaintiff alleges that because of the beating he endured his nose was broken and his eyes were injured and that he had to be housed in the medical clinic for 7 to 8 weeks to heal from his injuries.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." Rhodes v. Chapman, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary

7

and wanton infliction of pain." Ivey v. Wilson, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting Rhodes, 452 U.S. at 346). Among unnecessary and wanton infliction of pain are those that are "totally without penological justification." Id. The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." Rhodes, 452 U.S. at 348 (citation omitted). "Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." Ivey, 832 F.2d at 954.

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." Mingus v. Butler, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing Farmer v. Brennan, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims); see also Helling v. McKinney, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)).

The Supreme Court has held that "whenever guards use force to keep order," the standards enunciated in Whitley v. Albers, 475 U.S. 312 (1986), should be applied. Hudson v. McMillian, 503 U.S. 1, 7 (1992); see also Wilkins v. Gaddy, 130 S. Ct. 1175, 1178-79 (2010). Under Whitley, the core judicial inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson, 503 U.S. at 6-7; Wilkins, 130 S. Ct. at 1178. In determining whether the use of force is wanton and unnecessary, the Court should evaluate the need for application of force, the relationship between that need and the amount of force used, the threat "reasonably perceived by the responsible officials," and any efforts made to temper the severity of the forceful response. Hudson, 503 U.S. at 6-7 (citing Whitley, 475 U.S. at 321); accord Griffin v. Hardrick, 604 F.3d 949, 953-54 (6th Cir. 2010); McHenry v. Chadwick, 896 F.2d 184 (6th Cir. 1990).

At this juncture, Plaintiff's allegations are sufficient to warrant service of the complaint against Defendants Bowers, Froio and Trafton.

## VI. CONCLUSION

For the reasons set forth herein, Plaintiff has sufficiently stated an Eighth Amendment claim for excessive force against Defendants Bowers, Froio and Trafton. As such, this action shall be referred to the Magistrate Judge for further proceedings as described in the accompanying order. An appropriate order is filed herewith.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE