094-225-00

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | |
|---|---|
| GREGORY D. DOUGLAS, | ) |
| | ) |
| v. | ) No. 1:18-cv-00015 |
| | ) Judge Campbell/Frensley |
| DAMON HININGER, et al., | ) |

MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
MOTION FOR JUDGMENT ON THE PLEADINGS OR, IN THE ALTERNATIVE, MOTION
FOR SUMMARY JUDGMENT

Defendants CoreCivic, Brandon Bowers, and Doreen Trafton ("Defendants"), by and through counsel, submit the following memorandum of law in support of their contemporaneously filed Motion for Judgement on the Pleadings or, in the alternative, Motion for Summary Judgment.[1]

## BACKGROUND

Gregory D. Douglas (TDOC #458144) ("Plaintiff") is an inmate of the Tennessee Department of Correction. [SUMF ¶ 1]. On October 2, 2016, Plaintiff was being housed in Skylab Unit ("Skylab") at South Central Correctional Facility ("SCCF"). [SUMF ¶ 2].

At all times relevant, Brandon Bowers ("Bowers") and Doreen Trafton ("Trafton") were

---

[1] Without asserting an appearance on behalf of Joshep J. Froio ("Froio"), and without waiving any and all applicable affirmative defenses that Froio could possibly assert, this Court should dismiss Plaintiff's action against Froio pursuant to Rule 4(m) of the Federal Rules of Civil Procedure. Rule 4(m) provides, in pertinent part:

> *If a defendant is not served within 90 days after the complaint is filed, the court*—on motion or on its own after notice to the plaintiff—*must dismiss the action* without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m) (emphasis added). Plaintiff filed his Complaint on September 12, 2017, and an additional filing on March 14, 2018. [D.E. 1, 8]. This Court issued its Memorandum Opinion and Order on April 4, 2018. [D.E. 9, 10]. Froio's summons was issued on April 26, 2018. [*See* D.E. 12]. Froio's summons was subsequently returned unexecuted in June 7, 2018. [D.E. 19]. Therefore, because the 90 days allotted to serve Froio has passed, this Court should also dismiss Plaintiff's action against Froio pursuant to Rule 4(m).

employed by CoreCivic. [SUMF ¶¶ 3-4]. On October 2, 2016, Defendants Trafton and Bowers, along with another SCCF Officer Michael Ward ("Ward"), responded to an incident in which Plaintiff had assaulted two SCCF staff members – Officers Christopher Martinez ("Martinez") and Joseph Froio ("Froio"). [SUMF ¶ 5].[2]

Upon Defendant Trafton's arrival to the cell, Officers Martinez and Froio had Plaintiff, who was in a combative state, on the floor. [SUMF ¶ 12]. After Plaintiff became compliant, Defendant Trafton noticed a homemade weapon fall from Plaintiff's pants. [SUMF ¶ 13]. Defendant Trafton recovered the weapon, and Officers Trafton and Ward began escorting Plaintiff away from his cell.[3] [SUMF ¶¶ 14, 18].

Defendant Bowers arrived shortly thereafter, and Officers Ward and Bowers took over Plaintiff's escort. [SUMF ¶ 19]. Other than briefly escorting Plaintiff from his cell door with Ward prior to Bowers' arrival, Trafton did not touch Plaintiff. [SUMF ¶ 20]. As Officers Ward and Bowers were escorting Plaintiff into the central area of Skylab, Plaintiff began to struggle against his restraints, pull away from Bowers and Ward, and attempt to kick the officers. [SUMF ¶¶ 21-23]. Said actions posed an immediate threat to the safety and well-being of Plaintiff and of the officers present. [SUMF ¶ 24]. In an effort to gain control of Plaintiff, Bowers and Ward

---

[2] Based upon Plaintiff's actions on October 2, 2016, Plaintiff was charged with a disciplinary infraction for "assault staff – without weapon[n]." [SUMF ¶ 6]. The resulting disciplinary report provided that on October 2, 2016, "while [Martinez] was monitoring [Plaintiff] take his property from his cell," Plaintiff struck Martinez "several times with a closed fist to the face." [SUMF ¶ 7]. Plaintiff ultimately entered a plea of guilty as to the charge, was found guilty by the Disciplinary Committee, and elected to not appeal said guilty decision. [SUMF ¶ 8]. Based upon Plaintiff's actions on October 2, 2016, Plaintiff was also charged with a disciplinary infraction for "assault staff – without weapon[n]." [SUMF ¶ 9]. The resulting disciplinary report provided that on October 2, 2016, Froio "was attempting to restrain [Plaintiff] at which time said inmate did strike [Froio] on top of the head with a closed fist…." [SUMF ¶ 10]. Plaintiff ultimately entered a plea of guilty as to the charge, was found guilty by the Disciplinary Committee, and elected to not appeal said guilty decision. [SUMF ¶ 11].

[3] Based upon Plaintiff's actions on October 2, 2016, Plaintiff was also charged with a disciplinary infraction for "possession of deadly weapon." [SUMF ¶ 15]. The resulting disciplinary report provided that on October 2, 2016, Defendant Trafton, after responding to a report of Plaintiff assaulting staff, "noticed a homemade weapon 3 inches in length made of metal with the one end sharpened to a point and the other end had a white cloth wrapped around it for a handle, fall from [Plaintiff's] front pocket." [SUMF ¶ 16]. Plaintiff ultimately entered a plea of guilty as to the charge, was found guilty by the Disciplinary Committee, and elected to not appeal said guilty decision. [SUMF ¶ 17].

placed Plaintiff on the ground. [SUMF ¶ 25]. At no time did Ward or Bowers use more force than was necessary to gain control of Plaintiff. [SUMF ¶¶ 26-27].

After Plaintiff became compliant, Bowers and Ward continued escorting Plaintiff into a room inside of Skylab to be seen by a nurse. [SUMF ¶ 28]. However, upon entering the room, Plaintiff again began to struggle against his restraints, pull away from Bowers and Ward, and attempt to kick the officers. [SUMF ¶¶ 29-31]. Said actions posed an immediate threat to the safety and well-being of Plaintiff and of the officers present. [SUMF ¶ 32]. In an effort to gain control of Plaintiff, Bowers and Ward placed Plaintiff on the ground. [SUMF ¶ 33]. At no time did Ward or Bowers use more force than was necessary to gain control of Plaintiff. [SUMF ¶¶ 34-35]. After Plaintiff became compliant, Plaintiff was escorted to the primary medical facility at SCCF for evaluation and treatment by medical staff. [SUMF ¶ 36]. Another weapon was subsequently found in the waist band of Plaintiff's pants. [SUMF ¶ 37].[4]

## **STANDARD**

Rule 12(c) of the Federal Rules of Civil Procedure provides that "after the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." In considering such a motion, a court must "construe the complaint in the light most favorable to plaintiff, accept all of the complaint's factual allegations as true, and determine whether plaintiff undoubtedly can prove no set of facts in support of his claim[s] that would entitle him to relief." *Ziegler v. IBP Hog Market, Inc.*, 249 F.3d 509, 512 (6th Cir. 2001); *Mixon v. State of Oh*io, 193 F.3d 389, 400 (6th Cir. 1999). A court need not, however, accept as true legal conclusions or unwarranted factual inferences. *Mixo*n, 193 F.3d at 400.

---

[4] Based upon Plaintiff's actions on October 2, 2016, Plaintiff was also charged with a disciplinary infraction for "possession of deadly weapon." [SUMF ¶ 38]. The resulting disciplinary report provided that on October 2, 2016, Defendant Bowers, while conducting a search of Plaintiff, "found a home-made weapon made of a metal laundry hook placed inside of a sock and tied up." [SUMF ¶ 39]. Plaintiff ultimately entered a plea of guilty as to the charge, was found guilty by the Disciplinary Committee, and elected to not appeal said guilty decision. [SUMF ¶ 40].

Rule 56(a) of the Federal Rules of Civil Procedure states that "the court shall grant summary judgment if the movant shows that there is no genuine issue dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. Once the moving party satisfies its burden, the burden shifts to the nonmoving party to set forth specific facts showing a triable issue. *Mosholder v. Barnhardt,* 679 F.3d 443, 448-49 (6th Cir. 2012). "The 'mere possibility' of a factual dispute is not enough." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992). To defeat the motion for summary judgment, the non-moving party must present probative evidence that supports its complaint. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986).

## LAW & ARGUMENT

This Court should grant judgement on the pleadings and/or summary judgment to Defendants because Plaintiff has failed to state a claim upon which relief may be granted and because the undisputed material facts show that there is no genuine issue of material fact.

### I. ANY OFFICIAL CAPACITY CLAIMS MUST FAIL.

It is well-settled that official capacity claims against individual defendants are really claims against the defendant corporation. *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). "[O]fficial capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent." *Hafer v. Melo,* 502 U.S. 21, 25 (1991) (quoting *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690, n. 55 (1978)). Where the entity is named as a defendant, an official-capacity claim against an individual defendant is redundant. *Foster v. Michigan*, 573 Fed. Appx. 377, 390 (6th Cir. Mich. 2014); *Faith Baptist Church v. Waterford Twp.*, 522 F. App'x 322, 327 (6th Cir. 2013) ("Having sued…the entity for which [plaintiff] was an agent, the suit against [plaintiff] in his official capacity was superfluous."). In

such a situation, courts have held that the official capacity claim should be dismissed because there is no need to maintain an official capacity suit when the entity is also named as a Defendant. *Foster*, 573 Fed. Appx. at 386; *See also Jenkins v. Hardeman County*, 2013 U.S. Dist. LEXIS 146650, 5 (W.D. Tenn. Oct. 10, 2013). To the extent that Plaintiff asserted any official capacity claims against Defendants Bowers and/or Trafton, who were CoreCivic employees at all times relevant, said claims are in essence claims against Defendant CoreCivic itself, which is a party to this action. Accordingly, any official capacity claims asserted are redundant and should be dismissed as a matter of law.

> II. **PLAINTIFF FAILED TO PLEAD SUFFICIENT FACTS TO ESTABLISH A CONSTITUTIONAL CLAIM AGAINST DEFENDANT CORECIVIC.**

A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The pleading standard does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Id*. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 557. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id*. The factual allegations must "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Okolo v. Metro. Gov't*, 892 F. Supp. 2d 931, 937 (M.D. Tenn. 2012). A court need not accept as true legal conclusions or unwarranted factual inferences. *Montgomery v. Huntington Bank*, 346 F.3d 693, 698 (6th Cir. 2003).

"Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged but it has not shown that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009) (internal punctuation omitted). In evaluating a plaintiff's claims against federal officers, the *Iqbal* Court instructed that courts should first identify pleadings that are not entitled to an assumption of truth because they are no more than conclusions. *Id*. The Court pointed to its previous decision in *Twombly* as an example of such pleadings or assertions, providing:

> Recognizing that § 1 enjoins only anticompetitive conduct effected by a contract, combination, or conspiracy, the plaintiffs in *Twombly* flatly pleaded that the defendants 'had entered into a contract, combination or conspiracy to prevent competitive entry…and had agreed not to compete with one another. The complaint also alleged that the defendants' 'parallel course of conduct to prevent competition' and inflate prices was indicative of the unlawful agreement alleged.

*Id*. (citing *Twombly*, 550 U.S at 551) (internal punctuation omitted). The *Iqbal* Court then explained that the Court in *Twombly* found that the assertion of an unlawful agreement was a legal conclusion and not entitled to an assumption of truth. *Id*. (citing *Twombly*, 550 U.S at 555). The *Iqbal* Court then noted that the allegation of parallel conduct in Twombly, while consistent with an unlawful agreement, was nevertheless insufficient to plausibly suggest that an unlawful agreement had been reached. *Id*. (citing *Twombly*, 550 U.S at 564-567).

The *Iqbal* Court then identified the plaintiff's allegations that were not entitled to an assumption of truth in its case, such as that the defendants "knew of, condoned, and willfully and maliciously agreed to subject him to harsh conditions of confinement as a matter of policy, solely on account of his religion, race and/or national origin and for no legitimate penological interest." *Id*. at 1951. The Court also identified allegations that a defendant was "the principal architect" of this invidious policy, and that another defendant was "instrumental in adopting and executing it," as not being entitled to an assumption of truth. *Id*. at 1951 (internal punctuation omitted). Since

the Supreme Court's decisions in *Twombly* and *Iqbal*, the Sixth Circuit has explicitly held that a plaintiff's claim that "[t]hese policies, practices, and customs resulted in Plaintiff suffering almost constant pain for the entire time of the most recent incarceration," was insufficient to state a claim against a private prison health service. *Maxwell v. Corr. Med. Servs.*, 538 Fed. App'x 682, 692 (6th Cir. 2013).

"The initial inquiry in any section 1983 action must focus on whether the alleged conduct resulted in the deprivation of rights, privileges or immunities secured by the Constitution or laws of the United States." *Smith v. Lexington Fayette Urban County Gov't*, 884 F. Supp. 1086, 1090 (E.D. Ky. 1995) (citing *Parratt v. Taylor*, 451 U.S. 527, 535 (1981)). "Unless a deprivation of some federal constitutional or statutory right has occurred, Section 1983 provides no redress even if the plaintiff's common law rights have been violated and even if the remedies available under state law are inadequate." *Id*. Therefore, to prevail on the claim under 42 U.S.C. § 1983 in this matter, Plaintiff must plead and prove two essential elements: (1) each individual Defendant deprived the Plaintiff of a right, privilege, or immunity secured to him by the United States Constitution, federal statute, or other federal law; and (2) each individual Defendant caused the deprivation while acting under color of state law. *See Hale v. Randolph*, 2004 U.S. Dist. LEXIS 10173 (E.D. Tenn. Jan. 30, 2004).

Within Plaintiff's "Motion to Amend Petition," Plaintiff recited case law concerning supervisory liability for improper training and inadequate investigation of citizen complaints. [D.E. 11].[5] However, Plaintiff failed to make any actual factual allegations against CoreCivic, including but not limited to facts indicating what training was purportedly deficient and/or when there have been inadequate investigations of citizen complaints. [*Id*.]. Likewise, Plaintiff failed

---

[5] CoreCivic was added as a Defendant after the Court had already completed its initial review pursuant to the Prison Litigation Reform Act. [*See* D.E. 13].

to assert that there was any specific policy or custom at SCCF that caused any alleged constitutional deprivation related to the incident on October 2, 2016. [*Id.*]. Therefore, because Plaintiff failed to make any factual allegations whatsoever against CoreCivic, Defendant CoreCivic should be dismissed from this case as a matter of law.

Moreover, the Sixth Circuit has applied the standards for assessing municipal or county liability to claims against private corporations that operate prisons. *See Thomas v. Coble*, 55 F. App'x 748, 748 (6th Cir. 2003). In circumstances where a constitutional violation is established, it is well-settled that a municipality cannot be held liable under § 1983 solely on a *respondeat superior* theory, simply because it may employ a tortfeasor. *See Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 403 (1997); *Monell v. Dept. of Soc. Servs. of New York*, 436 U.S. 658, 692 (1978); *Miller v. Calhoun County*, 408 F.3d 803, 813 (6th Cir. 2005). To impose liability under § 1983 upon a municipality, therefore, a plaintiff must show that some policy or custom of the municipality was the moving force behind the alleged constitutional deprivation. *See Monell*, 436 U.S. at 691; *Miller*, 408 F.3d at 813; *Nelson,* 2013 U.S. Dist. LEXIS 54396 at *9-10 ("In order to state a claim against a county under [42 U.S.C.] § 1983, the plaintiff must identify a policy or custom of the municipality, connect the policy to the governmental entity, and show that his injury was incurred because of that policy.")

Notably, Courts have held that a supervisory official's failure to supervise, control, or train the offending individual is not actionable unless the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it. *Poe v. Haydon,* 853 F.2d 418, 429 (6th Cir. 1988). At a minimum, a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). As explained above,

Plaintiff has named CoreCivic as a defendant; however, within his pleadings, he only provided facts/allegations concerning CoreCivic employees – not CoreCivic itself. [D.E. 11]. Accordingly, because any claim against Defendant CoreCivic based upon the action or inaction of any of its employees is not proper and because Defendant CoreCivic cannot be held liable under § 1983 on a *respondeat superior* theory, Defendant CoreCivic should be dismissed from this matter.

### III. PLAINTIFF FAILED TO EXHAUST HIS ADMINISTRATIVE REMEDIES AS REQUIRED UNDER THE PRISON LITIGATION REFORM ACT.

Even if Plaintiff would have included sufficient factual allegations within his pleadings, Plaintiff nevertheless failed to properly exhaust his administrative remedies as required under the Prison Litigation Reform Act ("PLRA"). The PLRA specifically provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Sixth Circuit has specifically held that the language of § 1997e(a) stating that "no action shall be brought with respect to prison conditions" until all available remedies are exhausted, "should be interpreted to mean precisely what is obviously intended — that a federal court should not prematurely decide the merits of any such action." *Brown v. Toombs*, 139 F.3d 1102, 1104 (6th Cir. 1998), *overruled in part on other grounds*. As such, pursuant to the PLRA, an inmate's unexhausted claims cannot be brought into court. *Jones v. Bock*, 549 U.S. 199, 211 (2007). This mandatory exhaustion requirement applies to all lawsuits relating to prison conditions, regardless of the nature of the wrong or the relief sought. *Porter v. Nussle*, 534 U.S. 516, 524 (2002). Exhaustion is required even if the prisoner subjectively believes the remedy is not available, even if the state cannot grant the particular relief requested, and even if the prisoner believes the procedure to be ineffectual or futile. *Napier v. Laurel Cnty.*, 636 F.3d 218, 222 (6th Cir. 2011) (citations

omitted). Consequently, summary judgment is the appropriate outcome when a defendant is able to demonstrate an inmate-plaintiff's failure to exhaust available administrative remedies. *Id*.

The PLRA requires "proper exhaustion," meaning that an inmate's grievance must comply with the procedural rules and requirements of the prison or prison system in order for the exhaustion requirement to be met. *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). Prisoners must complete the administrative review process in accordance with the applicable procedural rules — rules that are defined not by the PLRA, but by the prison grievance process itself. *Jones*, 549 US at 218. The level of detail necessary to comply with the grievance procedure will vary from system to system, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion. *Jones*, 549 US at 218.

The importance of using the prison grievance process is to alert prison officials to specific problems. *Freeman v. Francis*, 196 F.3d 641, 644 (6th Cir. 1999). A grievance is only sufficient to the extent that it gives prison officials a fair opportunity to address the problem or problems that will later serve as the basis of the lawsuit. *See Woodford*, 548 U.S. at 95; *Johnson v. Johnson*, 385 F.3d 503, 517-23 (5th Cir. 2004). When a plaintiff's grievance fails to address the issue that serves as the basis of the Complaint, the plaintiff has not properly exhausted his administrative remedies, and the Court should dismiss his claim. *See Cook v. Caruso*, 531 Fed. App'x 554, 562 (6th Cir. 2013). Notably, this Court recently held "that the PLRAs exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Villasana v. Pittman*, 2018 U.S. Dist. LEXIS 210418, *17 (M.D. Tenn. Dec. 10, 2018).

In this matter, SCCF follows the TDOC Policy that allows inmates to submit a written complaint/grievance concerning the substance or application of a written or unwritten policy or

practice, any single behavior or action toward an inmate by staff or other inmates, or any condition or incident within SCCF, which personally affects the inmates. [SUMF ¶ 41]. Upon arrival at SCCF, each inmate is given an inmate handbook, which contains the grievance procedure. [SUMF ¶ 42]. The policy requires an inmate to submit a grievance within "seven calendar days of the occurrence giving rise to the grievance." [SUMF ¶ 43]. Pursuant to TDOC Policy, an inmate is also required to provide specific details such as "dates, times, and the names of the persons involved," in the occurrence giving rise to the grievance. [SUMF ¶ 44]. Grievances may be returned as inappropriate if an inmate attempts to grieve inappropriate matters such as institutional placement, classification, or Security Threat Group program placement. [SUMF ¶ 45]. An inappropriate grievance will be returned to an inmate, who can then appeal its designation as inappropriate or refile an appropriate grievance that complies with TDOC policy. [SUMF ¶ 46]. Pursuant to the TDOC policies and procedures, an inmate has exhausted his administrative remedies when the inmate has filed an appropriate and proper grievance and appealed the response all the way through the TDOC Commissioner's Office. [SUMF ¶ 47].

SCCF maintains records of all inmate grievances properly filed, and those inmate grievances are recorded in the Tennessee Offender Management Information System ("TOMIS"), a computerized database for the TDOC. [SUMF ¶ 48]. According to TOMIS, Plaintiff did not file any proper grievances from October 2, 2016 – the date of the incident alleged in the complaint – through November 28, 2016 – the date that Plaintiff left SCCF. [SUMF ¶ 49]. Furthermore, Plaintiff did not file any grievance concerning Brandon Bowers or

Doreen Trafton after October 2, 2016. [SUMF ¶ 50].[6]

As addressed above, it is "mandatory" that inmates *first* exhaust the available grievance procedures prior to filing a suit. *Porter*, 534 U.S. at 524 (emphasis added). Accordingly, because Plaintiff failed to properly exhaust his administrative remedies concerning the claims asserted against Defendant Bowers, Trafton, and CoreCivic in this matter, this Court should grant Defendants summary judgment.

## IV. PLAINTIFF DID NOT SUFFER A CONSTITUTIONAL DEPRIVATION.

Likewise, Plaintiff has failed to establish that these Defendants deprived him of any constitutional right at any time. In examining an excessive force claim under the Eighth Amendment, the constitutional analysis has both a subjective and an objective component, requiring the court to determine "whether the force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm," and whether "the pain inflicted was sufficiently serious." *Cordell v. McKinney,* 759 F.3d 573, 580 (6th Cir. 2014) (internal quotation marks and citations omitted) (alteration added). Therefore, "courts considering a prisoner's claim must ask both if 'the officials acted with a sufficiently culpable state of mind' and if the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation." *Hudson v. McMillian*, 503 U.S. 1, 8 (1992) (citation omitted). The heightened Eighth Amendment standard acknowledges that "'[t]he maintenance of prison security and discipline may require that inmates be subjected to physical contact actionable as assault under common law.'" *Cordell*, 759 F.3d at 580 (quoting *Combs v. Wilkinson*, 315 F.3d 548, 556 (6th Cir. 2002)) (alteration in original).

---

[6] Any attempt by Plaintiff to rely upon the inappropriate grievance documentation attached to his original complaint to satisfy his exhaustion requirement should be disregarded, as said documentation makes no reference to Defendant Bowers, Defendant Trafton, and/or Defendant CoreCivic. [*See* D.E. 1-2].

The United States Supreme Court has stated that within the context of excessive force claims, "[t]he objective component of an Eighth Amendment claim is…contextual and responsive to contemporary standards of decency," but "[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated." *Hudson*, 503 U.S. at 8-9. To establish the subjective component of a claim, the actions of prison officials must constitute "the unnecessary and wanton infliction of pain[.]" *Whitley*, 475 U.S. at 319. Ultimately, a determination of what constitutes "unnecessary and unwanton infliction of pain," is "contextual and responsive to contemporary standards of decency." *Hudson*, 503 U.S. at 8, 112 S. Ct. 995. "[S]uch factors as the need for the application of force, the relationship between the need and the amount of force that was used, [and] the extent of injury inflicted,' are relevant [in determining the manner in which the force was applied]." *White v. Bell*, 2015 U.S. Dist. LEXIS 117719, at *6-7 (M.D. Tenn. Aug. 31, 2015) (citing *Whitley*, 475 U.S. at 321). Courts have explained:

> Other relevant factors include the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them, and any efforts made to temper the severity of a forceful response. From such considerations inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur.

*Id*. Courts have clarified, "[T]he mere fact that a prisoner was subjected to physical contact does not, by itself, show an Eighth Amendment violation, and the good faith use of physical force in pursuit of valid penological goals rarely, if ever, violates the Eighth Amendment." *Sanford v. Schofield*, 2015 U.S. Dist. LEXIS 46851, *9-10 (W.D. Tenn. Apr. 10, 2015) (internal citations omitted). Notably, "[n]ot every 'push and shove' violates the Eighth Amendment, but only an amount of physical force that is 'repugnant to the conscience of mankind.'" *Davis v. Davis*, 2017

U.S. Dist. LEXIS 42877, at *17 (E.D. KY Mar. 23, 2017).

### a. Defendant Bowers

Defendant Bowers did not use excessive force against Plaintiff. Defendant Bowers took over Plaintiff's escort after Plaintiff had just attacked two other officers, and a weapon had been discovered on Plaintiff's person. [SUMF ¶¶ 5-19]. When Plaintiff became non-compliant, tried to slip from his handcuffs, and tried to kick Officers Bowers and Ward, the officers were forced to place Plaintiff on the ground to restrain him twice due to Plaintiff's continued active physical resistance during escort. [SUMF ¶¶ 21-25, 29-33]. First, during his escort to Skylab's medical room, Bowers and Ward were forced to place Plaintiff on the ground when Plaintiff struggled against his restraints, pulled away from Bowers and Ward, and kicked at Bowers and Ward. [SUMF ¶¶ 21-25]. Next, when the officers arrived at the Skylab medical room with Plaintiff, Bowers and Ward again had to place Plaintiff on the ground when Plaintiff tried to jerk away from and kicked at Bowers and Ward. [SUMF ¶¶ 29-33]. These two uses of force were solely and directly applied due to Plaintiff's continued resistance in the form of attempting to pull away from them on multiple occasions, resisting and/or trying to remove his restraints, and attempting to kick officers. [SUMF ¶¶ 21-25, 29-33]. Defendant Bowers' actions were objectively reasonable because Plaintiff's actions posed an immediate threat to the safety and well-being of the officers involved, as well as to Plaintiff, and because Defendant Bowers used no more force than was necessary to stop Plaintiff from pulling away from and kicking officers. [SUMF ¶¶ 24, 27-28, 32, 35-36]. At no time on October 2, 2016, did any Defendant use any type of unnecessary physical force on Plaintiff. [SUMF ¶¶ 27, 28, 35, 36]. Based upon the Plaintiff's actions and Defendant Bowers' objectively reasonable responses, Bowers' actions did not constitute an "unnecessary and wanton infliction of pain" to Plaintiff at any time relevant.

Instead, Bowers' actions were a "good faith use of physical force in pursuit of valid penological goals," namely the safety and security of the officers, the Plaintiff, and the other inmates. *See Sanford v. Schofield*, 2015 U.S. Dist. LEXIS 46851, at *9-10. Accordingly, Plaintiff's Eighth Amendment claim asserted against Bowers must fail.

### b. Defendant Trafton

On October 2, 2016, Defendant Trafton was only responsible for a very short part of Plaintiff's escort and for confiscating a weapon from Plaintiff. [SUMF ¶¶ 13-14, 18-20]. She did not participate in placing Plaintiff on the ground, as her assistance was not requested by the other officers. [SUMF ¶¶ 13-14, 18-20].[7] Therefore, because Defendant Trafton did not use force on Plaintiff, much less *excessive* force, on October 2, 2016, Plaintiff's Eighth Amendment claim asserted against Trafton must fail.

### c. Defendant CoreCivic

As a threshold matter, it is well-settled that if a plaintiff fails to establish any constitutional violation by the individual defendants, the municipal defendant cannot be held liable under § 1983. *See Watkins v. City of Battle Creek*, 273 F.3d 682, 687 (6th Cir. 2007). Accordingly, because Plaintiff cannot prove the existence of any underlying constitutional deprivation in this matter, the Court should grant summary judgment in favor of CoreCivic as to all claims.

The Court should additionally grant Defendant CoreCivic summary judgment, as Plaintiff has offered no evidence to show that a CoreCivic policy or custom and/or training was the moving force behind his alleged deprivation. To the contrary, at all relevant times, Defendant CoreCivic adhered to and trained its security personnel on TDOC's Administrative Policy and Procedure

---

[7] Within his pleadings, Plaintiff claims that after the purported force was used against him, he "open[ed] his eyes to see who all it was I see Lt. Ward, Captain Inman, SC/O Trafner, CO Bowers, and C/O Froio." [D.E. 8, PageID #: 39]. Plaintiff makes no allegation that Defendant Trafton ever actively participated in any force used against him. [*See id*.].

506.08, concerning "the use of force." [SUMF ¶ 51]. Policy and Procedure 506.08 provides, "The level of force used shall be determined by the person's actions, behavior, level of resistance, and the circumstances of the interaction." [SUMF ¶ 52]. Policy and Procedure 506.08 provides, "The least restrictive and least severe use of force or control option that is necessary, under the circumstances, to stop and control the offender's inappropriate, unlawful or dangerous behavior(s) shall be limited to that which an officer is authorized to use." [SUMF ¶ 53]. Policy and Procedure 506.08 provides, "Intentional misuse of authority granted under this policy is grounds for disciplinary actions." [SUMF ¶ 54]. Policy and Procedure 506.08 provides, "The use of force continuum provides staff members with a level of force to respond immediately with the most appropriate and reasonable control option to ensure the safety and protection of the public, self, others, property, and to gain control of a situation." [SUMF ¶ 55]. Accordingly, because the aforementioned policy is fully in line with constitutional requirements of the Eighth Amendment, said policy cannot be the "moving force," and thus, Plaintiff's claim asserted against Defendant CoreCivic must fail.

## CONCLUSION

Wherefore, premises considered, Defendants respectfully request this Honorable Court for judgment to be entered in their favor on the grounds that there is no genuine issue of material fact and that Defendants are entitled to have judgement entered in their favor dismissing this lawsuit with prejudice as a matter of law.

Respectfully submitted,

PENTECOST, GLENN & MAULDIN, PLLC

By: s/J. Austin Stokes
James I. Pentecost (#11640)
J. Austin Stokes (#31308)
Attorneys for Defendants
106 Stonebridge Boulevard
Jackson, Tennessee 38305
(731) 668-5995- Telephone
(731) 668-7163- Fax

## CERTIFICATE OF SERVICE

This is to certify that I served a copy of this pleading (Memorandum of Law in Support of Defendants' Motion for Judgment on the Pleadings, or in the alternative, Motion for Summary Judgment) by U.S. mail upon the following:

Gregory Douglas, #458144
West Tennessee State Penitentiary
P.O. Box 1150
Henning, TN 38041

This the 6th day of March, 2020.

By: s/J. Austin Stokes
J. Austin Stokes