UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | |
|---|---|
| GREGORY D. DOUGLAS, | ) |
| | ) |
| v. | ) No. 1:18-cv-00015 |
| | ) Judge Campbell/Frensley |
| DAMON HININGER, et al., | ) |

DEFENDANTS' STATEMENT OF UNDISPUTED MATERIAL FACTS

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Defendants CoreCivic, Brandon Bowers, and Doreen Trafton submit the following statement of undisputed, material facts which they rely upon in their contemporaneously filed motion for summary judgment:

***

1. Plaintiff Gregory D. Douglas (TDOC #458144) ("Plaintiff") is an inmate of the Tennessee Department of Correction. [D.E. 1].

   Response:

2. On October 2, 2016, Plaintiff was being housed in Skylab Unit ("Skylab") at South Central Correctional Facility ("SCCF"). [D.E. 1].

   Response:

3. At all times relevant, Brandon Bowers ("Bowers") was employed by CoreCivic. [Bowers Dec. ¶ 2].

   Response:

4. At all times relevant, Doreen Trafton ("Trafton") was employed by CoreCivic. [Trafton Dec. ¶ 2].

   Response:

5. On October 2, 2016, Defendants Trafton and Bowers, along with another SCCF Officer Michael Ward ("Ward"), responded to an incident in which Plaintiff had assaulted two SCCF staff members – Officers Christopher Martinez ("Martinez") and Joseph Froio ("Froio") – in Skylab. [Bowers Dec. ¶ 3; Trafton Dec. ¶ 3; Ward Dec. ¶ 3].

   Response:

6. Based upon Plaintiff's actions on October 2, 2016, Plaintiff was charged with a disciplinary infraction for "assault staff – without weapon[n]." [Gonzales Dec. ¶ 3].

Response:

7. The resulting disciplinary report provided that on October 2, 2016, "while [Martinez] was monitoring [Plaintiff] take his property from his cell," Plaintiff struck Martinez "several times with a closed fist to the face." [Gonzales Dec. ¶ 3].

Response:

8. Plaintiff ultimately entered a plea of guilty as to the charge, was found guilty by the Disciplinary Committee, and elected to not appeal said guilty decision. [Gonzales Dec. ¶ 3].

Response:

9. Based upon Plaintiff's actions on October 2, 2016, Plaintiff was also charged with a disciplinary infraction for "assault staff – without weapon[n]." [Gonzales Dec. ¶ 4].

Response:

10. The resulting disciplinary report provided that on October 2, 2016, Froio "was attempting to restrain [Plaintiff] at which time said inmate did strike [Froio] on top of the head with a closed fist…." [Gonzales Dec. ¶ 4].

    Response:

11. Plaintiff ultimately entered a plea of guilty as to the charge, was found guilty by the Disciplinary Committee, and elected to not appeal said guilty decision. [Gonzales Dec. ¶ 4].

    Response:

12. Upon Defendant Trafton's arrival to the cell, Officers Martinez and Froio had Plaintiff, who was in a combative state, on the floor. [Trafton Dec. ¶ 4].

    Response:

13. After Plaintiff became compliant, Defendant Trafton noticed a homemade weapon fall from Plaintiff's pants. [Trafton Dec. ¶ 4].

Response:

14. Defendant Trafton recovered the weapon from Plaintiff. [Trafton Dec. ¶ 4].

   Response:

15. Based upon Plaintiff's actions on October 2, 2016, Plaintiff was charged with a disciplinary infraction for "possession of deadly weapon." [Gonzales Dec. ¶ 5].

   Response:

16. The resulting disciplinary report provided that on October 2, 2016, Defendant Trafton, after responding to a report of Plaintiff assaulting staff, "noticed a homemade weapon 3 inches in length made of metal with the one end sharpened to a point and the other end had a white cloth wrapped around it for a handle, fall from [Plaintiff's] front pocket." [Gonzales Dec. ¶ 5].

   Response:

17. Plaintiff ultimately entered a plea of guilty as to the charge, was found guilty by the Disciplinary Committee, and elected to not appeal said guilty decision. [Gonzales Dec. ¶ 5].

    Response:

18. Officers Trafton and Ward subsequently began escorting Plaintiff away from his cell. [Trafton Dec. ¶ 5; Ward Dec. ¶ 4].

    Response:

19. Defendant Bowers arrived shortly thereafter, and Officers Ward and Bowers took over Plaintiff's escort. [Bowers Dec. ¶ 4; Trafton Dec. ¶ 5; Ward Dec. ¶ 4].

    Response:

20. Other than briefly escorting Plaintiff from his cell door with Ward prior to Bowers' arrival,

Trafton did not touch Plaintiff. [Trafton Dec. ¶ 5].

Response:

21. As Officers Ward and Bowers were escorting Plaintiff into the central area of Skylab, Plaintiff began to struggle against his restraints. [Bowers Dec. ¶ 5; Ward Dec. ¶ 4].

Response:

22. As Officers Ward and Bowers were escorting Plaintiff into the central area of Skylab, Plaintiff began to pull away from Bowers and Ward. [Bowers Dec. ¶ 5; Ward Dec. ¶ 4].

Response:

23. As Officers Ward and Bowers were escorting Plaintiff into the central area of Skylab, Plaintiff began to attempt to kick the officers. [Bowers Dec. ¶ 5; Ward Dec. ¶ 4].

Response:

24. Plaintiff's actions of attempting to struggle against his restraints, to pull away, and to kick the officers posed an immediate threat to the safety and well-being of Plaintiff and of the officers present. [Ward Dec. ¶ 4].

   Response:

25. In an effort to gain control of Plaintiff, Bowers and Ward placed Plaintiff on the ground. [Bowers Dec. ¶ 6; Ward Dec. ¶ 4].

   Response:

26. At no time did Ward use more force than was necessary to gain control of Plaintiff. [Ward Dec. ¶ 4].

   Response:

27. At no time did Bowers use more force than was necessary to gain control of Plaintiff. [Bowers Dec. ¶ 6].

   Response:

28. After Plaintiff became compliant, Bowers and Ward continued escorting Plaintiff into a room inside of Skylab to be seen by a nurse. [Bowers Dec. ¶ 7; Ward Dec. ¶ 5].

   Response:

29. Upon entering the room, Plaintiff again began to struggle against his restraints. [Bowers Dec. ¶ 8; Ward Dec. ¶ 5].

   Response:

30. Upon entering the room, Plaintiff again began to pull away from Bowers and Ward. [Bowers

Dec. ¶ 8; Ward Dec. ¶ 5].

Response:

31. Upon entering the room, Plaintiff again began to attempt to kick the officers. [Bowers Dec. ¶ 8; Ward Dec. ¶ 5].

Response:

32. Plaintiff's actions of attempting to struggle against his restraints, to pull away, and to kick the officers posed an immediate threat to the safety and well-being of Plaintiff and of the officers present. [Ward Dec. ¶ 5].

Response:

33. In an effort to gain control of Plaintiff, Bowers and Ward placed Plaintiff on the ground. [Bowers Dec. ¶ 9; Ward Dec. ¶ 5].

Response:

34. At no time did Ward use more force than was necessary to gain control of Plaintiff. [Ward Dec. ¶ 5].

Response:

35. At no time did Bowers use more force than was necessary to gain control of Plaintiff. [Bowers Dec. ¶ 9].

Response:

36. After Plaintiff became compliant, Plaintiff was escorted to the primary medical facility at

SCCF for evaluation and treatment by medical staff. [Bowers Dec. ¶ 11; Ward Dec. ¶ 6].

Response:

37. Another weapon was subsequently found in the waist band of Plaintiff's pants. [Bowers Dec. ¶ 12].

Response:

38. Based upon Plaintiff's actions on October 2, 2016, Plaintiff was also charged with a disciplinary infraction for "possession of deadly weapon." [Gonzales Dec. ¶ 6].

Response:

39. The resulting disciplinary report provided that on October 2, 2016, Defendant Bowers, while conducting a search of Plaintiff, "found a home-made weapon made of a metal laundry hook

placed inside of a sock and tied up." [Gonzales Dec. ¶ 6].

Response:

40. Plaintiff ultimately entered a plea of guilty as to the charge, was found guilty by the Disciplinary Committee, and elected to not appeal said guilty decision. [Gonzales Dec. ¶ 6].

Response:

41. SCCF follows the TDOC Policy that allows inmates to submit a written complaint/grievance concerning the substance or application of a written or unwritten policy or practice, any single behavior or action toward an inmate by staff or other inmates, or any condition or incident within SCCF, which personally affects the inmates. [Pevahouse Dec. ¶ 4].

Response:

42. Upon arrival at SCCF, each inmate is given an inmate handbook, which contains the grievance procedure. [Pevahouse Dec. ¶ 5].

    Response:

43. The policy requires an inmate to submit a grievance within "seven calendar days of the occurrence giving rise to the grievance." [Pevahouse Dec. ¶ 6].

    Response:

44. Pursuant to TDOC Policy, an inmate is also required to provide specific details such as "dates, times, and the names of the persons involved," in the occurrence giving rise to the grievance. [Pevahouse Dec. ¶ 7].

    Response:

45. Grievances may be returned as inappropriate if an inmate attempts to grieve inappropriate

matters such as institutional placement, classification, or Security Threat Group program placement. [Pevahouse Dec. ¶ 8].

Response:

46. An inappropriate grievance will be returned to an inmate, who can then appeal its designation as inappropriate or refile an appropriate grievance that complies with TDOC policy. [Pevahouse Dec. ¶ 9].

Response:

47. Pursuant to the TDOC policies and procedures, an inmate has exhausted his administrative remedies when the inmate has filed an appropriate and proper grievance and appealed the response all the way through the TDOC Commissioner's Office. [Pevahouse Dec. ¶ 10].

Response:

48. SCCF maintains records of all inmate grievances properly filed, and those inmate grievances are recorded in the Tennessee Offender Management Information System ("TOMIS"), a computerized database for the TDOC. [Pevahouse Dec. ¶ 11].

   Response:

49. According to TOMIS, Plaintiff did not file any proper grievances from October 2, 2016 until his transfer on November 28, 2016. [Pevahouse Dec. ¶ 13].

   Response:

50. According to TOMIS, Plaintiff has never filed a grievance against Brandon Bowers or Doreen Trafton after October 2, 2016. [Pevahouse Dec. ¶ 14].

   Response:

51. At all relevant times, Defendant CoreCivic adhered to and trained its security personnel on TDOC's Administrative Policy and Procedure 506.08, concerning "the use of force." [Bowers Dec. ¶ 16; Trafton Dec. ¶ 6; Ward Dec. ¶ 7].

    Response:

52. Policy and Procedure 506.08 provides, "The level of force used shall be determined by the person's actions, behavior, level of resistance, and the circumstances of the interaction." [Bowers Dec. ¶ 16; Trafton Dec. ¶ 6; Ward Dec. ¶ 7].

    Response:

53. Policy and Procedure 506.08 provides, "The least restrictive and least severe use of force or control option that is necessary, under the circumstances, to stop and control the offender's inappropriate, unlawful or dangerous behavior(s) shall be limited to that which an officer is authorized to use." [Bowers Dec. ¶ 16; Trafton Dec. ¶ 6; Ward Dec. ¶ 7].

Response:

54. Policy and Procedure 506.08 provides, "Intentional misuse of authority granted under this policy is grounds for disciplinary actions." [Bowers Dec. ¶ 16; Trafton Dec. ¶ 6; Ward Dec. ¶ 7].

    Response:

55. Policy and Procedure 506.08 provides, "The use of force continuum provides staff members with a level of force to respond immediately with the most appropriate and reasonable control option to ensure the safety and protection of the public, self, others, property, and to gain control of a situation." [Bowers Dec. ¶ 16; Trafton Dec. ¶ 6; Ward Dec. ¶ 7].

    Response:

Respectfully submitted,

PENTECOST, GLENN & MAULDIN, PLLC

By: s/J. Austin Stokes
James I. Pentecost (#11640)
J. Austin Stokes (#031308)
Attorneys for Defendants
106 Stonebridge Boulevard
Jackson, Tennessee 38305
(731) 668-5995 – Telephone
(731) 668-7163 – Facsimile

## CERTIFICATE OF SERVICE

This is to certify that I served a copy of this pleading (Defendants' Statement of Undisputed Material Facts) by U.S. mail upon the following:

Gregory Douglas, #458144
West Tennessee State Penitentiary
P.O. Box 1150
Henning, TN 38041

This the 6th day of March, 2020.

By: s/J. Austin Stokes
J. Austin Stokes