# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### COLUMBIA DIVISION

| | | |
|---|---|---|
| **GREGORY D. DOUGLAS,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 1:18-cv-00015** |
| | ) | **Judge Campbell / Frensley** |
| | ) | |
| **DAMON HININGER, et al.,** | ) | |
| **Defendant.** | ) | |

## REPORT AND RECOMMENDATION

## I. INTRODUCTION AND BACKGROUND

In this civil rights action, Gregory D. Douglas ("Mr. Douglas") alleges that his Eighth Amendment rights were violated when Defendants Brandon E. Bowers ("Officer Bowers"), Joseph J. Froio ("Officer Froio") and Doreen G. Trafton ("Officer Trafton") used excessive force against him during his incarceration at South Central Correctional Facility ("SCCF"). Docket No. 1, pp. 5, 8. Mr. Douglas further alleges that Defendant CoreCivic, the company that manages SCCF, has a custom of ignoring inmate allegations of excessive force. Docket No. 56, p. 6.

This matter is before the Court upon a Motion for Judgment on the Pleadings or, in the alternative, Motion for Summary Judgment, filed by Defendants CoreCivic, Bowers, and Trafton ("Defendants").[1] Docket No. 51. Along with their Motion, Defendants have filed a supporting Memorandum of Law, a Statement of Undisputed Material Facts, and the Declarations of SCCF Disciplinary Board Chairperson Gina Gonzales, Officers Brandon Bowers, Doreen Trafton, and

---

[1] Officer Froio has not been properly served in this action. Summons to Officer Froio were returned unexecuted due to the fact that he no longer works at the correctional facility. The Court will address service to this Defendant in a separate Order.

Michael Ward,[2] and SCCF Grievance Chairperson Brenda Pevahouse. Docket Nos. 51-1 ("Gonzalez Dec."), 51-2 ("Bowers Dec."), 51-3 ("Trafton Dec."), 51-4 ("Pevahouse Dec."), 51-5 ("Ward Dec."), 52 (Supporting Memorandum), 53 ("Defendants' Statement of Undisputed Material Fact"). As grounds for their Motion, Defendants argue that: (1) Mr. Douglas failed to exhaust his administrative remedies as required under the Prison Litigation Reform Act ("PLRA"); (2) any official capacity claims against Defendants must fail; (3) Mr. Douglas failed to plead sufficient facts to establish a constitutional claim against Defendant CoreCivic; and (4) Mr. Douglas did not suffer a constitutional deprivation. Docket No. 52.

Mr. Douglas has filed a 50-page Response in opposition to Defendants' Motion, included in which are Mr. Douglas's Declaration and 32 pages of exhibits. Docket No. 56. Mr. Douglas also filed a Response to Defendants' Statement of Undisputed Material Facts and his own Statement of Undisputed Facts. Docket Nos. 57, 58. In his Response, Mr. Douglas contends that he exhausted his administrative remedies by filing grievances in the SCCF system, which he maintains were improperly handled by SCCF staff. Docket No. 56, pp. 7, 27-28. Mr. Douglas attempts to argue that Defendants are properly amenable to suit in their official capacities but instead merely addresses suit against the Defendants in their individual capacities. *Id.* at 4. Mr. Douglas avers that he pled sufficient facts to establish a constitutional claim against CoreCivic because he can produce witnesses to testify to the general use of excessive force by CoreCivic employees. *Id.* at 6. Finally, Mr. Douglas argues that, on the facts he presented, a jury could reasonably find that Defendants violated his Eighth Amendment rights by using excessive force against him. *Id.* at 10.

Defendants have filed a Reply to Mr. Douglas's Statement of Undisputed Facts. Docket

---

[2] Although Officer Michael Ward is mentioned in Mr. Douglas's pleadings, he was not made a party to this action.

No. 59. In their Reply, Defendants argue that none of Mr. Douglas's Statements are supported by specific citation to the record, as required by Local Rule 56.01, and that Mr. Douglas failed to submit proper summary judgment evidence to support his allegations. *See* L.R. 56.01; *id.*

Mr. Douglas filed his initial Complaint in this pro se, in forma pauperis action pursuant to 42 U.S.C. § 1983, alleging that Defendants violated his Eighth Amendment rights by subjecting him to racial discrimination and using excessive force against him on October 2, 2016. Docket No. 1. Mr. Douglas filed suit against Damon T. Hininger as CEO and President of CoreCivic/Correctional Corporations of America, as well as correctional officers Bowers, Froio, and Trafton, in their individual and official capacities.[3] *Id.* Following Judge Crenshaw's Memorandum Opinion on April 4, 2018, the only remaining claims in this action are Mr. Douglas's Eighth Amendment claims against Officers Bowers, Froio, and Trafton, in their official and individual capacities, and Mr. Douglas's Eighth Amendment claims against Defendant CoreCivic. Docket No. 10. Mr. Douglas seeks monetary damages. *Id.*

For the reasons discussed below, the undersigned finds that Mr. Douglas properly exhausted his administrative remedies prior to filing suit, Mr. Douglas pleads a claim upon which relief can be granted, and there remains a genuine dispute of material fact between the parties. The undersigned therefore recommends that Defendants' Motion for Judgment on the Pleadings or, in the alternative, Motion for Summary Judgment (Docket No. 51) be GRANTED in part and DENIED in part.

---

[3] Defendant CoreCivic was added by Mr. Douglas in his Amended Complaint on April 27, 2018. *See* Docket Nos. 11, 13.

## II. FACTS

### A.  Undisputed Facts[4]

Mr. Douglas is an inmate of the Tennessee Department of Correction ("TDOC"). Docket Nos. 53, ¶ 1; 57, ¶ 1. On October 2, 2016, Mr. Douglas was being housed in Skylab Unit ("Skylab") at SCCF. Docket Nos. 53, ¶ 2; 57, ¶ 2. At all times relevant, Officer Bowers and Officer Trafton were employed by CoreCivic. Docket Nos. 53, ¶¶ 3-4; 57, ¶¶ 3-4.

On October 2, 2016, Mr. Douglas was informed that he was being moved to a different cell. Docket Nos. 1, p. 5; 24, p. 2. Officer Froio and fellow SCCF Officer Christopher Martinez ("Officer Martinez") entered Skylab to escort Mr. Douglas. Docket Nos. 58, ¶ 1; 59, ¶ 1. According to the disciplinary reports from that day, Officer Martinez was watching Mr. Douglas take his property from his cell when Mr. Douglas struck Officer Martinez "several times with a closed fist to the face." Docket Nos. 53, ¶ 7; 57, ¶ 7. The reports also provide that, as Officer Froio was attempting to restrain Mr. Douglas, "said inmate did strike [Froio] on top of the head with a closed fist. . . ." Docket Nos. 53, ¶ 10; 57, ¶ 10. Mr. Douglas then temporarily complied with the orders of Officers Martinez and Froio, who were able to properly place restraints on Mr. Douglas. Docket Nos. 58, ¶ 2; 59, ¶ 2. Mr. Douglas was charged with two disciplinary infractions following the incident for "assault[ing] staff – without [a] weapo[n]." Docket Nos. 53, ¶¶ 6, 9; 57, ¶¶ 6, 9. Mr. Douglas ultimately entered guilty pleas as to both charges, was found guilty by the Disciplinary Committee, and elected to not appeal the decision. Docket Nos. 53, ¶¶ 8, 11; 57, ¶¶ 8, 11.

Following the altercation, Officer Trafton arrived at Mr. Douglas's cell. Docket Nos. 53,

---

[4] The following facts are undisputed by both parties, as acknowledged by Defendants' Statement of Undisputed Material Facts (Docket No. 53), Mr. Douglas's Response (Docket No. 57), Mr. Douglas's Statement of Undisputed Facts (Docket No. 58), and Defendants' Reply (Docket No. 59).

¶¶ 12-13; 57, ¶¶ 12-13. At that time, Officer Trafton noticed a homemade weapon fall from Mr. Douglas's pants. Docket Nos. 53, ¶ 13; 57, ¶ 13. The weapon was metal and 3 inches long. Docket Nos. 53, ¶ 16; 57, ¶ 16. One end of the weapon was sharpened to a point, and the other end had a white cloth wrapped around it to create a handle. Docket Nos. 53, ¶ 16; 57, ¶ 16. Officer Trafton recovered the weapon from Mr. Douglas. Docket Nos. 53, ¶ 14; 57, ¶ 14. As a result, Mr. Douglas was charged with a disciplinary infraction for "possession of a deadly weapon." Docket Nos. 53, ¶ 15; 57, ¶ 15. Docket Nos. 53, ¶ 16; 57, ¶ 16. Mr. Douglas entered a plea of guilty as to the charge, was found guilty by the Disciplinary Committee, and elected not to appeal the decision. Docket Nos. 53, ¶ 17; 57, ¶ 17.

After Officer Trafton seized Mr. Douglas's weapon, Officers Trafton and Ward began escorting Mr. Douglas away from his cell. Docket Nos. 53, ¶ 18; 57, ¶ 18. Although the parties dispute what happened after Officers Trafton and Ward escorted Mr. Douglas away from his cell, it is undisputed that another weapon was subsequently found in the waistband of Mr. Douglas's pants. Docket Nos. 53, ¶ 37; 57, ¶ 37. Specifically, the parties agree that, while conducting a search of Mr. Douglas, Officer Bowers found a homemade weapon "made of a metal laundry hook [that was] placed inside of a sock and tied up." Docket Nos. 53, ¶ 39; 57, ¶ 39. For this, Mr. Douglas was charged with a second disciplinary infraction for "possession of deadly weapon." Docket Nos. 53, ¶ 38; 57, ¶ 38. Mr. Douglas entered a plea of guilty as to the charge, was found guilty by the Disciplinary Committee, and elected to not appeal the decision. Docket Nos. 53, ¶ 40; 57, ¶ 40.

Mr. Douglas sustained an injury as a result of the physical altercations on October 2, 2016. Docket Nos. 58, ¶ 10; 59, ¶¶ 10, 23. Mr. Douglas was transported to the Wayne County Medical Center on October 2, 2016. Docket Nos. 58, ¶ 13; 59 ¶¶ 13, 24. Mr. Douglas requested his medical records from personnel at West Tennessee State Penitentiary ("WTSP"), but this request was

denied. Docket Nos. 58, ¶ 24; 59, ¶ 24.

TDOC policy requires an inmate to submit a grievance within "seven calendar days of the occurrence giving rise to the grievance." Docket Nos. 53, ¶ 43; 57, ¶ 43. Grievances may be returned as inappropriate if an inmate attempts to grieve inappropriate matters, such as institutional placement, classification, or Security Threat Group program placement. Docket Nos. 53, ¶ 45; 57, ¶ 45. Pursuant to the TDOC policies and procedures, an inmate has exhausted his administrative remedies when the inmate has filed an appropriate and proper grievance and appealed the response all the way through the TDOC Commissioner's Office. Docket Nos. 53, ¶ 47; 57, ¶ 47.

### B. Disputed Facts

The parties dispute the facts concerning what happened after Mr. Douglas assaulted Officers Froio and Martinez in Skylab on October 2, 2016. *See* Docket Nos. 53, ¶ 12; 57, ¶ 12.

Mr. Douglas asserts that, following his physical altercation with Officers Froio and Martinez, the officers continued to mace him after he was already compliant and on the floor. Docket Nos. 57, ¶ 12; 58, ¶¶ 3-4. Defendants dispute these allegations and contend that Mr. Douglas remained in a combative state up to Officer Trafton's arrival at his cell. Docket Nos. 53, ¶ 12; 59, ¶ 2. Docket No. 59, ¶¶ 3-4.

The parties also dispute facts concerning what happened after Officers Ward and Trafton began escorting Mr. Douglas away from his cell in Skylab on October 2, 2016. *See* Docket Nos. 53, ¶¶ 19-35; 57, ¶¶ 19-35.

Defendants contend that Officer Bowers arrived to take over Mr. Douglas's escort shortly after Officers Ward and Trafton began escorting Mr. Douglas away from his cell. Docket No. 53 ¶ 19. Mr. Douglas, however, contends that Officer Bowers's purpose was never to take over the transportation and further alleges that Officer Bowers immediately rammed Mr. Douglas's head into the wall out of the pod door. Docket No. 57, ¶ 19. Defendants dispute the allegation that

Officer Bowers rammed Mr. Douglas's head into the wall. Docket No. 59, ¶ 5.

Mr. Douglas avers that Officer Trafton aided in transporting Mr. Douglas and was "involved" when Mr. Douglas was taken to the "secluded area." Docket No. 57, ¶ 20. Mr. Douglas further asserts that Officer Trafton "spewed profanity" and urged the other officers to give him "payback." Docket No. 58, ¶¶ 6, 16. Defendants object to these allegations. Docket No. 59, ¶ 6.

Defendants contend that, as Officers Ward and Bowers were escorting Mr. Douglas into the central area of Skylab, Mr. Douglas began to struggle against his restraints, pull away from the officers, and attempt to kick the officers. Docket No. 53, ¶¶ 21-23. Defendants contend that the officers placed Mr. Douglas on the ground to gain control of him because his actions created a threat to the safety and wellbeing of himself and the officers present. Docket No. 53, ¶¶ 24-25. Defendants assert that, after Mr. Douglas became compliant, Officers Bowers and Ward continued escorting him to a room inside Skylab to be seen by a nurse, but that, upon entering, he began struggling against his restraints again, pulling away from and attempting to kick the officers. Docket No. 53, ¶¶ 28-31. Defendants contend that Officers Bowers and Ward again placed Mr. Douglas on the ground to gain control of him because his actions created a threat to the safety and wellbeing of himself and the officers present. Docket No. 53, ¶¶ 32-33. Defendants contend that neither Officer Ward nor Officer Bowers ever used more force than was necessary to gain control of Mr. Douglas. Docket No. 53, ¶¶ 26-27, 34-35. Finally, Defendants contend that, after Mr. Douglas became compliant, he was escorted to the primary medical facility at SCCF for evaluation and treatment by medical staff. Docket No. 53, ¶ 36.

Mr. Douglas maintains that he was compliant the entire time he was out of his cell and did not struggle against his restraints, attempt to pull away, or attempt to kick the officers at any point. Docket No. 57, ¶¶ 21-23, 29-32, 34-36. Mr. Douglas contends that he did not pose an immediate

7

threat to himself or any officers present and that Officer Ward and Officer Bowers used more force than was necessary considering this compliance. Docket No. 57, ¶¶ 24-27, 34-35. Mr. Douglas alleges that the officers intentionally took him to a room to beat him and that there was no nurse present. Docket Nos. 57, ¶ 28; 58, ¶ 10. Mr. Douglas maintains that he was never told to get on the ground and was, in fact, "beat to the ground." Docket No. 57, ¶ 33. Mr. Douglas further asserts that Officers Ward and Bowers punched his body multiple times with closed fists, slammed his head into the wall, pulled his hair, and kicked him countless times. Docket No. 58, ¶¶ 7-8.

Defendants contend that SCCF follows the TDOC Policy for prisoner grievances. Docket No. 53, ¶ 41. According to Defendants, this policy allows inmates to submit a written complaint/grievance concerning the substance or application of a written or unwritten policy or practice, any single behavior or action toward an inmate by staff or other inmates, or any condition or incident within SCCF that personally affects the inmates. *Id.* Defendants assert that an inappropriate grievance will be returned to an inmate, who can then appeal its designation as inappropriate or refile an appropriate grievance that complies with TDOC policy. Docket No. 53, ¶ 46. Defendants contend that SCCF maintains records of all inmate grievances properly filed in the Tennessee Offender Management Information System ("TOMIS"), a computerized database for TDOC. Docket No. 53, ¶ 48. Defendants contend that, according to TOMIS, Mr. Douglas did not file any proper grievances from October 2, 2016 until his transfer on November 28, 2016, nor did he ever file a proper grievance against Officers Bowers or Trafton after October 2, 2016. Docket Nos. 53, ¶¶ 49-50; 59, ¶ 14.

Mr. Douglas maintains that SCCF does not follow the TDOC policy and, in fact, hinders the enforcement of the policy and the process of appropriately filing grievances. Docket No. 57, ¶¶ 41, 46. Mr. Douglas maintains that he filed several grievances that received no response or

"excuses like my handwriting was illegible." Docket No. 57, ¶ 49. Mr. Douglas further asserts that SCCF does not accurately maintain records of all inmate grievances properly filed in TOMIS because, per the declaration of SCCF Grievance Chairperson Brenda Pevahouse, all of the grievances he filed were not visible in TOMIS. Docket No. 57, ¶ 48. Mr. Douglas asserts that, because the grievances are logged in TOMIS by SCCF officials, the officers may be covering them up. *Id.* Finally, Mr. Douglas contends that he has filed multiple grievances against Officers Bowers and Trafton. Docket No. 57, ¶ 50.

Defendants contend that, at all relevant times, Defendant CoreCivic adhered to and trained its security personnel on TDOC's Administrative Policy and Procedure 506.08, concerning the use of force. Docket No. 53, ¶ 51. Mr. Douglas disputes this fact, arguing that CoreCivic did not properly train its employees. Docket No. 57, ¶ 51.

## III.   LAW AND ANALYSIS

### A.   Motion for Judgment on the Pleadings

Defendants filed a Motion for Judgment on the Pleadings, contending that Mr. Douglas fails to state a claim upon which relief can be granted. Docket No. 51, p. 1.

Federal Rule of Civil Procedure 12(c) states:

After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings.

Fed. R. Civ. P. 12(c).

A motion for judgment on the pleadings is granted when no material issue of fact exists, and the party making the motion is entitled to judgment as a matter of law. *Bickley v. Dish Network, LLC*, 751 F.3d 724, 733 (6th Cir. 2014), *quoting Paskvan v. City of Cleveland Civil Serv. Comm'n,* 946 F.2d 1233, 1235 (6th Cir. 1991). When evaluating a Motion for Judgment on the Pleadings, the Court may consider all of the pleadings and any attachments to them, which are

9

considered part of the pleadings for all purposes. *See* Fed. R. Civ. P. 10(c).

A 12(c) motion for judgment on the pleadings generally follows the same rules as a motion to dismiss a complaint under Rule 12(b)(6). *See D'Ambrosio v. Marino*, 747 F.3d 378, 383 (6th Cir. 2014). Thus, the Court must follow the Supreme Court's pleading standards in *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). *See Engler v. Arnold*, 862 F.3d 571, 575 (6th Cir. 2017). Under this standard, the Court must accept as true all well-pleaded factual allegations, although it need not accept legal conclusions. *Iqbal*, 556 U.S. at 679, 129 S.Ct. at 1950, 173 L.Ed.2d at 868. To survive a Motion for Judgment on the Pleadings, the well-pleaded factual allegations in a plaintiff's complaint must "plausibly give rise to an entitlement to relief." *Id.*, 129 S.Ct. 1950. Factual allegations do so when they allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678, 129 S.Ct. at 1949, 173 L.Ed.2d at 868.

### B.    Motion for Summary Judgment

Alternatively, Defendants have filed a Motion for Summary Judgment, contending that there are no issues of material fact, and Defendants are thus entitled to judgment as a matter of law. Docket No. 51, p. 1.

Under Federal Rule of Civil Procedure 56(a),

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law....

Fed. R. Civ. P. 56(a).

In order to prevail on a Motion for Summary Judgment, the moving party must meet the burden of proving the absence of a genuine issue as to a material fact concerning an essential

element of the opposing party's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1989). The Supreme Court's decision in *Anderson v. Liberty Lobby, Inc.* instructs that a dispute is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and that a "material" fact is one that "might affect the outcome of the suit under the governing law." 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). *Anderson* further provides that a Court may not weigh evidence or evaluate witness credibility on a motion for summary judgment, as these are functions properly reserved for a jury. *Id.* at 255, 106 S.Ct. at 2513, 91 L.Ed.2d at 202.

In determining whether the moving party has met its burden, the Court must view the evidence in the light most favorable to the nonmoving party. *Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). However, the nonmoving party is still required to make a showing sufficient to establish the existence of an element essential to that party's case, on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322-23, 106 S.Ct. at 2552, 91 L.Ed.2d at 273. According to Federal Rule 56(c), a party asserting a genuine dispute of a material fact must support his assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c).

The Sixth Circuit has further clarified that, for purposes of summary judgment, a verified complaint carries the same weight as would an affidavit. *Se*e *El Bey v. Roop*, 530 F.3d 407, 414

(6th Cir. 2008), *citing Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993). *See also Williams v. Browman*, 981 F.2d 901, 905 (6th Cir. 1992) (concluding that a prisoner's signed complaint with a statement declaring the truth of the allegations under penalty of perjury was sufficient to place controverted facts into issue). If the nonmoving party nevertheless fails to make such a sufficient showing, there is no genuine issue as to any material fact, and the moving party is entitled to summary judgment as a matter of law. *Celotex*, 477 U.S. at 322-23, 106 S.Ct. at 2552, 91 L.Ed.2d at 273; *Williams v. Ford Motor Co.,* 187 F.3d 533, 537-38 (6th Cir. 1999).

Mr. Douglas asserts that, due to his incarceration, he is unable to obtain copies of evidence relevant to these proceedings, specifically the video from the date of the incident at issue. Docket No. 56, p. 11. Rule 56(d) states, in pertinent part:

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
>
> (1) defer considering the motion or deny it;
>
> (2) allow time to obtain affidavits or declarations or to take discovery; or
>
> (3) issue any other appropriate order.

Fed. R. Civ. P. 56(d).

### C.     PLRA, 42 U.S.C. § 1997e

Defendants aver that Mr. Douglas failed to properly exhaust his administrative remedies as required by the Prison Litigation Reform Act of 1995 ("PLRA"). Docket No. 52, p. 9.

A prisoner must exhaust all available administrative remedies before filing a claim under §1983 or any other federal law. 42 U.S.C. §1997e(a). *See also, e.g., Wyatt v. Leonard*, 193 F.3d 876, 878 (6th Cir. 1999); *White v. McGinnis*, 131 F.3d 593, 595 (6th Cir. 1997). The PLRA provides, in pertinent part, as follows:

**(a) Applicability of Administrative Remedies**. No action shall be brought with

respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a) (emphasis in original).

However, failure to exhaust is an affirmative defense that must be pleaded and proved by the defendants. *Mattox v. Edelman*, 851 F.3d 583, 590 (6th Cir. 2017), *citing Jones v. Bock*, 549 U.S. 199, 216, 127 S.Ct. 910, 921, 166 L.Ed.2d 798 (2007). In *Mattox*, the Sixth Circuit held that "[w]hen the defendants in prisoner civil rights litigation move for summary judgment on administrative exhaustion grounds, they must prove that no reasonable jury could find that the plaintiff exhausted his administrative remedies." *Id.*, *citing Surles v. Andison*, 678 F.3d 452, 455-56 (6th Cir. 2012). The Supreme Court has held that "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Bock*, 549 U.S. at 218, 127 S.Ct. at 923, 166 L.Ed.2d 798. In *Risher v. Lappin*, the Sixth Circuit further clarified that, "[t]his court requires an inmate to make 'affirmative efforts to comply with the administrative procedures,'" and analyzes whether those "efforts to exhaust were sufficient under the circumstances." 639 F.3d 236, 240 (6th Cir. 2011).

### D.    Standard for Pro Se Litigants

Mr. Douglas has filed this civil action pro se. Docket No. 11, p. 1.

Federal Rule of Civil Procedure 8(e) provides that, "Pleadings must be construed so as to do justice." Fed. R. Civ. P. 8(e). Applying this standard to pro se litigants, the Supreme Court noted that, "a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007), *citing Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976). The Sixth Circuit further clarified that pro se complaints should be "liberally

construed." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011), *citing Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004).

### E.    42 U.S.C. § 1983

### 1.    Generally

Mr. Douglas alleges violations of his Eighth Amendment rights pursuant to 42 U.S.C. § 1983. *See* Docket No. 1.

Section 1983 provides, in part, that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

Thus, in order to state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution or laws of the United States and must show that the alleged deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48, 108 S.Ct. 2250, 2254-55, 101 L.Ed.2d 40 (1988), *citing Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 1913, 68 L.Ed.2d 420 (1981) (*overruled in part on other grounds*, *Daniels v. Williams,* 474 U.S. 327, 330-31, 106 S.Ct. 662, 664-65, 88 L.Ed.2d 662 (1986)); *Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 155, 98 S.Ct. 1729, 1733, 56 L.Ed.2d 185 (1978).  The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *West*, 487 U.S. at 49, *quoting United States v. Classic,* 313 U.S. 299, 326, 61 S.Ct. 1031, 1043, 85 L.Ed. 1368 (1941).

2.      **Eighth Amendment**

The Eighth Amendment provides that:

Excessive bail shall not be required, nor excessive fines imposed, nor cruel and
unusual punishments inflicted.

U.S. Const. amend. VIII.

The United States Supreme Court has held that the constitutional prohibition of "cruel and
unusual punishments" forbids punishments that are incompatible with "the evolving standards of
decency that mark the progress of a maturing society," or which "involve the unnecessary and
wanton infliction of pain." *Estelle*, 429 U.S. at 102-03, 97 S.Ct. at 290, 50 L.Ed.2d 251 (citations
omitted).

In order to establish an Eighth Amendment claim, an inmate must satisfy a two-prong test:
(1) the deprivation alleged must be objectively serious; and (2) the official responsible for the
deprivation must have exhibited deliberate indifference to the inmate's health or safety. *Farmer v.
Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970, 1977, 128 L.Ed.2d 811 (1994).

a.      **Excessive Force**

Mr. Douglas contends that Officers Bowers, Froio, and Trafton used excessive against him
on October 2, 2016. Docket No. 1, pp. 5, 8.

An inmate's post-conviction excessive force claim is raised "exclusively under the Eighth
Amendment's cruel and unusual punishment clause." *Combs v. Wilkinson*, 315 F.3d 548, 556 (6th
Cir. 2002), *citing Pelfrey v. Chambers*, 43 F.3d 1034, 1036–37 (6th Cir. 1995). While the Eighth
Amendment's prohibition against cruel and unusual punishment prohibits the wanton and
unnecessary infliction of pain upon prisoners, the mere fact that a prisoner was subjected to
physical contact which may have been forceful does not, by itself, show an Eighth Amendment
violation. *Parrish v. Johnson,* 800 F.2d 600, 604-05 (6th Cir. 1986). Where a prison security

measure is involved, the Supreme Court has said that "whether the measure taken inflicted unnecessary and wanton pain and suffering ultimately turns on whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Whitley v. Albers*, 475 U.S. 312, 320-21, 106 S. Ct. 1078, 1085, 89 L.Ed.2d 251 (1986) (citations omitted). *See also Cordell v. McKinney*, 759 F.3d 573, 580 (6th Cir. 2014). The Sixth Circuit has clarified that "the good faith use of physical force in pursuit of valid penological or institutional goals will rarely, if ever, violate the Eighth Amendment." *Parrish,* 800 F.2d at 604, *citing Whitley*, 475 U.S. at 319, 106 S.Ct. at 1084, 89 L.Ed.2d at 251; *Rhodes v. Chapman*, 452 U.S. 337, 346, 101 S. Ct. 2392, 2398, 69 L.Ed.2d 59 (1981).

### F.    Official Capacity Claims

Defendants contend that any official capacity claims against Officers Bowers, Trafton, and Froio must fail. Docket No. 52, p. 4.

Regarding official capacity claims against public employees, this Court has held:

In complaints alleging federal civil rights violations under § 1983, an official capacity claim filed against a public employee is equivalent to a lawsuit directed against the public entity which that agent represents. As such, when a public employee is sued in his or her official capacity, the claims are essentially made against the public entity.

*Vaughn v. Long,* No. 3:10-00622, 2011 U.S. Dist. LEXIS 101692, at *9 (M.D. Tenn. July 18, 2011) (internal quotation marks omitted), *citing Claybrook v. Birchwell*, 199 F.3d 350, 355, n.4 (6th Cir. 2000). *See also Kentucky v. Graham*, 473 U.S. 159, 165, 105 S. Ct. 3099, 3105, 87 L.Ed.2d 114 (1985); *Frost v. Hawkins Cty. Bd. of Educ.*, 851 F.2d 822, 827 (6th Cir. 1988). Furthermore, in an analogous case, this Court recently held that, "to the extent the named Defendants are employed by Core Civic [*sic*], the claims against them in their official capacities are redundant to the claim against Core Civic [*sic*] itself . . . ." *Oatsvall v. Core Civic* [*sic*], No.

3:19-CV-00837, 2019 WL 5842929, at *6 (M.D. Tenn. Nov. 7, 2019).

### G. Claims Against Defendant CoreCivic

Defendants contend that Mr. Douglas fails to plead sufficient facts to establish a constitutional claim against Defendant CoreCivic. Docket No. 52, p.5.

Section 1983 does not permit the imposition of liability based upon *respondeat superior*. *Polk Cty. v. Dodson*, 454 U.S. 312, 325, 102 S.Ct. 445, 453, 70 L.Ed.2d 509 (1981), *citing Monell v. Dept. of Soc. Serv.*, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978). To establish official liability, therefore, Plaintiff must plead facts demonstrating that an officially-adopted policy or custom evinced deliberate indifference to the constitutional rights of persons the policy or custom affected. *City of Canton v. Harris*, 489 U.S. 378, 388-89, 109 S. Ct. 1197, 1204, 103 L.Ed.2d 412 (1989). *See also Monell*, 436 U.S. at 690-91, 98 S.Ct. at 2037, 56 L.Ed.2d at 611 (holding that, to find a governmental entity liable, Plaintiff must establish that he was deprived of a constitutionally protected interest and said deprivation was caused by an official policy, custom, or usage of the local governmental entity).

### H. The Case at Bar

As an initial matter, the Court finds that Mr. Douglas has properly exhausted his administrative remedies under the PLRA.

The grievance documentation attached to Mr. Douglas's Complaint and Response to Defendant's Motion establishes that Mr. Douglas filed at least four grievances related to the October 2, 2016 incident, the final of which was taken all the way to the Commissioner, who denied the appeal. Docket Nos. 1-2, pp. 1-4; 56, pp.19-23, 26-28, 36-38, 40-42, 46. While Mr. Douglas's initial grievance names only Officers Froio and Martinez, Mr. Douglas's grievance on

December 22, 2016 names the aforementioned officers as well as Officers Ward, Trafton,[5] and Bowers. Docket Nos. 1-2, pp. 3-4; 56, pp. 27-28. The exhibits attached by Mr. Douglas indicate that he pursued his grievances consistently from the date of first filing on October 7, 2016 to April 3, 2019. Docket Nos. 1-2, pp. 1-4; 56, pp.19-23, 26-28, 36-38, 40-42, 46. While it is true that Mr. Douglas's first grievance, returned as improper, was the only grievance filed within the seven days required by TDOC policy, the attached documentation shows that Mr. Douglas's final grievance regarding the incident was denied on the merits, rather than for lack of timeliness. Docket No. 56, p. 40.

As Defendants' note in their Motion, "[t]he importance of using the prison grievance process is to alert prison officials to specific problems." Docket No. 52, p. 10, *citing Freeman v. Francis*, 196 F.3d 641, 644 (6th Cir. 1999). Mr. Douglas pursued his grievances consistently from the date of first filing on October 7, 2016 to April 3, 2019; certainly, these actions were sufficient to put Defendants and their supervisors on notice of the specific problems Mr. Douglas alleged. Docket Nos. 1-2, pp. 1-4; 56, pp.19-23, 26-28, 36-38, 40-42, 46. Mr. Douglas "did not attempt to bypass the administrative grievance process detailed above; he affirmatively endeavored to comply with it." *See Risher*, 639 F.3d at 240. Thus, the Court finds that Mr. Douglas properly exhausted his administrative remedies before bringing his claims to this Court.

Furthermore, construing Mr. Douglas's pro se complaint liberally, the Court finds that he made sufficient effort to comply with the Federal Rules of Civil Procedure and Local Rules of this Court; thus, the Court will not dismiss his claims for their procedural deficiencies. *See Curtin*, 631 F.3d at 383. Mr. Douglas filed a verified complaint, which, for the purposes of summary judgment,

---

[5] Mr. Douglas specifically names "S/CO Trafner;" however, the Court finds this to be an immaterial scrivener's error.

carries the same weight as would an affidavit. *See El Bey*, 530 F.3d at 414; *Browman*, 981 F.2d at 905; Docket No. 1, p. 6 (signed "under the penalty of perjury"). Mr. Douglas further attached a signed, dated Declaration, photographic evidence, and grievance documentation to his Memorandum in Opposition. Docket No. 56. Mr. Douglas further responded to Defendants' Statement of Undisputed Material Facts (Docket No. 57) and provided his own Statement of Undisputed Facts (Docket No. 58). While Mr. Douglas's Statement suffers from several deficiencies, such as several instances of failure to cite to the record, the Statement properly gave Defendants notice of Mr. Douglas's factual allegations. *See Freeman*, 196 F.3d at 644. Thus, construing Mr. Douglas's pleading so as to do justice, the Court finds that Mr. Douglas's pleadings should not be dismissed on account of their procedural failings. Fed. R. Civ. P. 8(e).

The Court finds that the official capacity claims against Officers Bowers, Froio, and Trafton, however, should be dismissed for redundancy. Defendants are employees of SCCF, a correctional facility operated by CoreCivic. *See* Docket Nos. 51-2, 51-3. With regard to the official capacity claims against them, Defendants stand in the shoes of their employer, CoreCivic. *See Claybrook*, 199 F.3d at 355, n.4. Moreover, when, as here, the employer is named as a Defendant, official capacity claims against the individual Defendants are redundant and should be dismissed. *See Oatsvall*, 2019 WL 5842929, at *6. Because CoreCivic is a named Defendant in this action, Mr. Douglas's official capacity claims against the individual Defendants should be dismissed. *See Id.*

Mr. Douglas has not pled sufficient facts to establish a claim against Defendant CoreCivic; accordingly, Mr. Douglas's claims against Defendant CoreCivic should be dismissed.

Mr. Douglas maintains that CoreCivic improperly trained its employees and failed to properly investigate "citizen's complaints;" he contends that these policies and customs caused the

deprivation of his constitutionally protected interest. Docket No. 56, p. 6. Mr. Douglas avers that he has numerous witnesses "willing to testify to the guards using excessive force without repercussions or investigation." *Id.* Mr. Douglas also appears to contend that, whatever CoreCivic's official policy with regard to use of force by prison officials, in practice, CoreCivic encourages guards, staff, and officials to look the other way.[6] *Id.* Finally, Mr. Douglas contends that he has witnesses who can testify to instances in which excessive force complaints against CoreCivic guards, captains, and lieutenants went unanswered. *Id.* at 6-7.

Mr. Douglas's burden is to plead facts *demonstrating* that an official CoreCivic policy, practice, or custom caused him constitutional injury. *See City of Canton*, 489 U.S. at 388-89, 109 S. Ct. at 1204, 103 L.Ed.2d at 412; *Monell*, 436 U.S. at 690-91, 98 S.Ct. at 2037, 56 L.Ed.2d at 611. If Mr. Douglas has, as he contends, witnesses who can testify to a pattern of excessive force claims and unanswered complaints, it is his duty to obtain affidavits or other admissible forms of testimony to support his allegations; merely alleging that he *has* evidence is not enough to sustain a claim against a defendant at this stage. *See Iqbal*, 556 U.S. at 679, 129 S. Ct. at 1950, 173 L.Ed.2d at 868. Because Mr. Douglas has failed to establish that an official CoreCivic policy, practice, or custom caused him constitutional injury, Mr. Douglas cannot sustain his claims against CoreCivic. *See City of Canton*, 489 U.S. at 388-89, 109 S. Ct. at 1204, 103 L.Ed.2d at 412.

Mr. Douglas has, however, pled sufficient facts to establish a claim upon which relief may be granted as to Defendants Bowers, Froio, and Trafton, in their individual capacities, and Defendants fail to meet their burden of proving the absence of a genuine issue as to a material fact. Taking all of Mr. Douglas's factual allegations as true and construing the facts liberally in Mr.

---

[6] While Mr. Douglas uses the phrase, "turn the other cheek," the Court interprets this to be a misstatement; however, such misstatement does not materially alter the Court's interpretation or analysis.

Douglas's favor, the Court finds that Mr. Douglas has a colorable Eighth Amendment claim against Officers Bowers, Froio, and Trafton. *See Iqbal*, 556 U.S. at 679, 129 S. Ct. at 1950, 173 L.Ed.2d at 868; *Matsushita*, 475 U.S. at 587, 106 S. Ct. at 1356, 89 L.Ed.2d 538. Thus, neither judgment on the pleadings nor summary judgment is appropriate in this case.

Mr. Douglas alleges that Officer Bowers slammed his head into a wall, punched him, pulled his hair, and kicked him, that Officer Froio maced him while he was compliant on the ground, and that Officer Trafton encouraged violence against him. Docket No. 58, ¶¶ 4-7. Mr. Douglas has attached photographs depicting injuries he allegedly sustained as a result of the altercation. Docket No. 1-5. Mr. Douglas further claims he was transported to a hospital following the incident due to the severity of his injuries. *Id.* at 2. Defendants admit that Mr. Douglas's head was hit against a wall (Docket No. 51-2, ¶ 10) and that he sustained injuries as a result of the physical altercation on October 2, 2016 (Docket No. 59, ¶¶ 10, 23). Further, Defendants admit that Mr. Douglas was transported to Wayne County Medical Center on October 2, 2016. Docket No. 59, p. 5.[7]

Mr. Douglas avers that he requested the video footage of the altercation at issue, but he was unable to obtain it. Docket No. 56, p. 11. While the video footage would certainly provide more conclusive evidence of what happened on October 2, 2016, Mr. Douglas has nevertheless submitted facts sufficient that a reasonable jury could find that the force applied by Officer Bowers was an "unnecessary and wanton infliction of pain" applied "maliciously and sadistically to cause harm." *See Whitley*, 475 U.S. at 320-21; *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510, 91 L. Ed. 2d at 202.

---

[7] It is undisputed that Mr. Douglas attempted to request his hospital records to include as an exhibit, but this request was denied. Docket Nos. 58, ¶ 24; 59, ¶ 24.

In summary, the Court must accept Mr. Douglas's version of events at this stage in the litigation, without weighing the evidence or assessing the credibility of prospective witnesses. *See Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513, 91 L.Ed.2d at 202. Accepting Mr. Douglas's testimony and allegations as true, a reasonable jury could conclude that Mr. Douglas suffered severe pain that objectively violated contemporary norms of human dignity. *See Iqbal*, 556 U.S. at 679, 129 S.Ct. at 1950, 173 L.Ed.2d at 868; *id.* at 248, 106 S.Ct. at 2510, 91 L.Ed.2d at 202. Thus, Mr. Douglas has demonstrated that neither judgment on the pleadings nor summary judgment would be appropriate in this case.

## IV. CONCLUSION

For the foregoing reasons, the Court should find that Mr. Douglas properly exhausted his administrative remedies as required under the PLRA, plausibly states a claim upon which relief can be granted, and demonstrates that there is a genuine dispute of material fact as to his claims against Defendants Bowers, Froio, and Trafton, in their individual capacities. The undersigned therefore recommends that Defendant's Motion for Judgment on the Pleadings or, in the alternative, Motion for Summary Judgment (Docket No. 51) be GRANTED in part and DENIED in part.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S.

1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

**JEFFREY S. FRENSLEY**
**United States Magistrate Judge**